# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

**DAVID B. MARCHISILLO,**

    **Plaintiff,**

  **v.**

**Civil Action No. AW-04-1005**

**KENNETH LOUIS DAVIS, and**
**CORY DWIGHT EVANS,**

    **Defendants.**

## MEMORANDUM OPINION

Plaintiff David B. Marchisillo ("Plaintiff" or "Marchisillo") bring this diversity action against Defendants Kenneth Louis Davis ("Davis") and Cory Dwight Evans ("Evans") (collectively, "Defendants"), alleging a sole claim of negligence stemming from personal injuries sustained by Plaintiff in an automobile accident. Currently before the Court are the following motions: Davis's Motion for Summary Judgment [29], Evans's Motion for Summary Judgment [33], and Davis's Motion to Strike Affidavit [39]. The Court has reviewed the pleadings and applicable law and has determined that a hearing is unnecessary. See Local Rule 105(6) (D. Md. 2004). For the following reasons, both Defendants' Motions for Summary Judgment and Defendant Davis's Motion to Strike are denied.[1]

## FACTUAL & PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. On April 3, 2001, at approximately 11:30 a.m., Marchisillo and his son were traveling in Marchisillo's van, driving his son home

---

[1] The Court notes that Defendant Evans has filed an Amended Motion for Summary Judgment. Because the substance of that motion appears to be duplicative of Evans's prior Motion for Summary Judgment, the Amended Motion is similarly denied.

to buy some food. Marchisillo exited the apartment complex where he lived, and stopped at a stop sign where the exit to the apartment complex intersects with Great Seneca Highway, a road with two lanes going in each direction with a speed limit of 50 miles per hour. The weather was clear and the conditions were dry.

After bringing his vehicle to a stop, and seeing no cars approaching from the left, Marchisillo proceeded across the westbound[2] lanes of Great Seneca Highway. Marchisillo stopped his van at the median that separates the eastbound and westbound lanes and looked to his right, and observed two vehicles in the distance, approximately 900 feet away, just passing through the light at the intersection of Dawson Farm Road and Great Seneca Highway. Given the distance of the cars from his vehicle, Marchisillo proceeded to make a left turn onto Great Seneca Highway, and accelerated, driving in the direction of a bridge that is located approximately 258 feet beyond the intersection.

After completing his turn onto Great Seneca Highway and traveling for "about ten seconds," Marchisillo's van was struck in the rear by a vehicle operated by Evans. At the time Marchisillo's vehicle was struck, he had traveled far enough beyond the intersection that the front of his van was approximately two to three car lengths from the westerly side of the bridge, putting Marchisillo approximately 200 feet from the most eastern point of the intersection through which he had entered Great Seneca Highway.

At the time of the accident, Davis and Evans, both 17 years old, were driving home from Northwest High School. According to an eyewitness, Gary Arvin ("Arvin"), when Davis and Evans sped

---

[2] Both Defendants have referred to Great Seneca Highway as running north/south. However, based on a map provided by the US Geological Survey, the lanes of Great Seneca Highway, in which the parties were traveling, appears to be more accurately described as running in an east/west direction.

down Great Seneca Highway, they were traveling "at a minimum of 70 miles per hour, and more probably traveling in the range of 75-80 miles per hour — if not more." It appeared to Arvin, who was standing on the side of the road with a construction crew, that Davis and Evans were "racing one another" as they sped side by side down the two lane road in the direction of the bridge.

According to Arvin, as Davis and Evans approached Marchisillo's van, they did not slow down, but instead each attempted to drive around Marchisillo's van. Davis passed Marchisillo's vehicle on the right, while Evans's vehicle clipped the left rear corner of van, as he attempted to pass Marchisillo's van on the left. As a result of the accident, Marchisillo alleges that he suffered physical and mental injury, with accompanying pain and suffering.

On March 26, 2004, Marchisillo filed this action in this Court against Defendants, based on diversity jurisdiction, alleging a sole claim of negligence. In particular, Marchisillo alleges that Defendants acts of negligence include, but are not limited to, excessive speeding, following too closely, failure to adjust one's driving to the road conditions, racing, reckless driving, failure to give due time and attention to one's driving, failure to keep a proper lookout, failure to adequately control the operation of one's motor vehicle, and/or other acts of negligence. On January 7, 2005, Davis filed a Motion for Summary Judgment. On February 16, 2005, Evans filed a Motion for Summary Judgment. Both motions are ripe, and an opinion is now issued.

**STANDARD OF REVIEW**

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. See *Fed. R. Civ. P. 56(c)*; Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Id. at 255.

## DISCUSSION

Both Defendants have filed motions for summary judgment arguing that the boulevard rule shields them from any liability to Marchisillo. Additionally, Defendants contend that since they were not racing at a high rate of speed at the time of the accident, Defendants are not the proximate cause of the collision or the injuries Marchisillo sustained. Finally, Davis argues that since he was not involved in the actual collision, his actions were not the proximate cause of the collision or the injuries Marchisillo sustained.

In response, Marchisillo contends that there is ample evidence to the contrary to preclude the entry of summary judgment. In particular, Marchisillo argues that there is sufficient evidence that he had entered the flow of traffic prior to the collision, that Defendants were racing and operating their vehicles at an excessive rate of speed under the circumstances, and that Defendants failed to observe Marchisillo's vehicle until it was too late to avoid the collision. The Court will address each argument in turn.

**I.      Boulevard Rule**

Defendants first contend that the boulevard rule shields them from any liability to Marchisillo. The Maryland boulevard rule mandates that a driver of a vehicle approaching a through highway "shall stop at the entrance to the through highway; and yield the right-of-way to any other vehicle approaching on the through highway." Md. Code. Ann. Transp. § 21-403(b)(1) and (2). The boulevard rule arises from the

historical statutory mandate that a driver at an intersection who is required to stop before entering the intersection (called the "unfavored" driver) must yield the right-of-way to a driver not required to stop before entering the intersection (called the "favored" driver). Mallard v. Earl, 106 Md. App. 449, 456 (1995). The purpose of the boulevard rule is to facilitate the free flow of traffic on major thoroughfares by preventing interruptions or delays and ensuring the safety of the drivers there. Dean v. Redmiles, 280 Md. 137, 147 (1977).

Although the "duty of an unfavored driver to stop and yield the right-of-way is mandatory, positive, and inflexible," the favored driver "may not proceed in complete disregard of obvious dangers." Id. at 147-48. Moreover, the unfavored driver's duty to yield the right-of-way to the favored driver extends beyond the immediate area of the intersection such that "the fact that a collision occurs outside the intersection does not of itself bar the applicability of the boulevard [rule] if the collision is a result of a violation" of the rule. Grue v. Collins, 237 Md. 150, 157 (1964).

Although the boulevard rule is "mandatory, positive, and inflexible," the rule has its limits. Once the unfavored driver has cleared the intersection and reached a point where it does not interfere with the favored driver's right-of-way through the intersection, the boulevard rule ceases to be applicable. Id. As the Maryland Court of Appeals has made clear:

> Rigorous as are the duties imposed upon the unfavored driver in entering the public highway for the protection of the public and for the smooth flow of traffic, he is not a perpetual pariah; if he has observed the mandates of the law in entering the intersection and has become a part of the flow of traffic on the favored highway, he has the same rights and is subject to the same duties as the other drivers on that highway.

Id. Thus, where a genuine issue of material fact exists as to whether the unfavored driver failed to yield or had entered the flow of traffic prior to the accident, the issue of the unfavored driver's negligence properly

belongs to the province of the fact finder.

This Court finds a genuine material dispute on the issue of whether or not Marchisillo's unfavored vehicle had successfully entered the flow of traffic at the time the accident occurred. Defendants assert that Marchisillo failed to make sure that it was safe to proceed before entering the highway. In particular, Defendant Davis has presented evidence that at the time he observed Marchisillo enter the Great Seneca Highway, traveling forty miles an hour, Marchisillo was a mere 40 feet away. On the other hand, Marchisillo has presented evidence that he stopped at the median, observed Defendants' vehicles approximately 300 yards away, and then Marchisillo turned onto the road. Arvin, an eyewitness, observed Marchisillo "traveling at what appeared to be a normal speed for that road."

More importantly, in resolving the question, under Maryland law, of whether it was the primary negligence of Marchisillo that was the proximate cause of the accident — if the collision occurred while Marchisillo was entering onto the favored highway or not — courts have emphasized that "the point of impact is not only material, but of the upmost probative value." See Kowalewski v. Carter, 11 Md. App. 182, 189-90 (1971). Defendants contend that the collision occurred as Marchisillo was in the act of turning onto Great Seneca Highway. However, Marchisillo has brought forth evidence that the collision occurred as he neared the bridge, a distance of approximately 200 feet past the intersection. Whether the impact occurred as Marchisillo turned at the intersection or 200 yards from the intersection would substantially influence the issue of whether Marchisillo had successfully entered onto the favored highway and become a part of the flow of traffic.

Based on Marchisillo's evidence, this case appears factually analogous to the situation in Collins v. Schmidbauer, 237 Md. 150 (1964), where the point of impact was 174 feet from the intersection and,

according to the unfavored driver when he entered the highway, the favored driver was three quarters of a block away. Id. at 158. In that case, it was held that the testimony permitted the inference that the accident was not an intersectional one, and therefore it was for the jury to decide whether or not the unfavored driver had cleared the intersection and reached a point where he did not interfere with the favored driver's right-of-way. Id.

Additionally, other courts have found genuine issues of material fact with regard to the issue of the flow of traffic, when the point of impact was a lesser distance than the 200 feet distance from the intersection present here. See Paul v. Lyons, 34 Md. App. 93, 97 (1976) (finding a jury question on whether plaintiff was in the "flow of traffic" when plaintiff claimed to have proceeded 25 feet beyond the intersection before accident occurred); See Ness v. Males, 201 Md. 235 (1953) (finding a jury question when plaintiff claimed to have proceeded 33 feet from the intersection prior to collision); Grue, 237 Md. at 158 (finding a jury question when plaintiff claimed that accident occurred 174 feet from where he entered the intersection).

In short, this Court find a genuine issue of material fact with regards to whether Marchisillo's own negligence was the proximate cause of the collision or whether he was in the flow of traffic which would support an inference or presumption of Defendants' negligence.

## II.     Racing on a Public Highway

Defendants contend that since they were not racing at a high rate of speed at the time of the accident, Defendants are not the proximate cause of the collision or the injuries Marchisillo sustained. This Court cannot agree.

Maryland law provides that, "on any highway or on any private property that is used by the public

Case 8:04-cv-01005-AW   Document 41   Filed 08/03/05   Page 8 of 11

in general, a person may not drive a vehicle in a race or speed contest. . ." Md. Code Ann. Transp., § 21-1116(a).  Both Defendants deny participation in a speed race.  Defendants point to their own testimonies as supporting evidence that their speeds were no higher than 50 or 55 miles per hour.  Marchisillo, however, points to the affidavit of an eyewitness, Arvin, as evidence that Evans and Davis were engaged in a speed contest immediately preceding the collision.  Arvin testified that he observed Defendants traveling "at a minimum of 70 miles per hour, and more probably traveling in the range of 75-80 miles per hour — if not more."  Arvin also testified that he observed Defendants traveling "side by side" and "appeared to be racing one another" across Great Seneca Highway.  Moreover, the Court notes that despite Defendants vehement denial that they were engaged in "racing" or "excessive speeding," the record shows that both Defendants were charged with excessive speeding in traffic court.  This evidence is sufficient to raise a genuine material fact on the issue of whether Defendants were negligent in racing their vehicles on a public highway.

Finally, Davis argues that since he was not involved in the actual collision, his actions were not the proximate cause of the collision or the injuries Marchisillo sustained.  This argument too is unpersuasive.

As a general rule under Maryland law, if Evans and Davis were racing their automobiles at the time of the accident, they were equally responsible for any damage or injuries caused by an accident growing out of the illegal race, even though Davis was not actually involved in the collision.  Haddock v. Stewart, 232 Md. 139, 142 (1963).  As stated by the Maryland Court of Appeals:

> Racing motor vehicles on a public highway is negligence, and all those who engage in a race do so at their peril, and are liable for an injury sustained by the courts of various jurisdictions thereof, regardless of which of the racing cars actually inflicted the injury . . . ."

8

Id. (citations omitted). Accordingly, Davis's argument that because his vehicle did not come into contact with either Marchisillo's van or Evan's vehicle is irrelevant in determining liability because this Court has found a genuine issue of material fact with regard to whether Defendants were involved in a speed race on a public highway.

### III.    Motion to Strike Affidavit

Davis moves to strike the affidavit of Arvin on the basis that Arvin refused to appear to a scheduled deposition on May 18, 2005. Without any citation to case law, Davis contends that Arvin's refusal to attend the May 18, 2005 deposition prohibits him from conducting a fair and reasonable discovery deposition to determine the basis of Arvin's affidavit. This Court cannot agree.

Under Rule 15(a), leave for amendment of a party's pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Under Rule 16(b), however, the district court enters a scheduling order that limits the time to amend the pleadings. That scheduling order "shall not be modified except upon a showing of good cause and by leave of the district court judge or, when authorized by local rule, by a magistrate judge." Fed.R.Civ.P. 16(b). Considering the interplay of these rules, this Court previously has employed a two step analyis:

> Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a).

Sensormatic Security Corp. v. Sensormatic Elec. Corp., 2004 WL 86179 *3 (D. Md. 2004) (citing Marcum v. Zimmer, 163 F.R.D. 250, 254 (S.D.W.Va. 1995)).

As applied here, Defendants did not serve a subpoena on Arvin seeking his appearance at a deposition until April 10, 2005. Plaintiff identified Arvin as an eye-witness as early as June 18, 2004 (in

9

Case 8:04-cv-01005-AW   Document 41   Filed 08/03/05   Page 10 of 11

answers to Defendants' interrogatories filed). Despite this June 18, 2004 identification, Defendants made no effort to take Arvin's deposition until after the scheduling order's deadline for amendment of the pleadings on August 9, 2004 has passed. In fact, Defendants made no effort to take Arvin's deposition until after the scheduling order's deadline for discovery (as extended) had closed on January 20, 2005.

Because the scheduling order's deadline for both amendment of pleadings and close of discovery had both passed, Defendants must satisfy the good cause requirement of Rule 16(b). Id. (stating that because a court's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," a movant must show good cause to justify a departure from the rules set by the court in its scheduling order). Here, following the close of discovery, Defendants improperly noted the deposition of Arvin without seeking either the consent of this Court, a further extension of the discovery deadline. Moreover, Defendants' motion to strike make any reference to the good cause requirement. As such, this Court finds that Defendants have failed to satisfy the good cause requirement necessary to modify this Court's discovery deadline. Therefore, Defendant Davis's Motion to Strike the Affidavit of Arvis must be denied.

answers to Defendants' interrogatories filed). Despite this June 18, 2004 identification, Defendants made no effort to take Arvin's deposition until after the scheduling order's deadline for amendment of the pleadings on August 9, 2004 has passed. In fact, Defendants made no effort to take Arvin's deposition until after the scheduling order's deadline for discovery (as extended) had closed on January 20, 2005.

Because the scheduling order's deadline for both amendment of pleadings and close of discovery had both passed, Defendants must satisfy the good cause requirement of Rule 16(b). Id. (stating that because a court's scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," a movant must show good cause to justify a departure from the rules set by the court in its scheduling order). Here, following the close of discovery, Defendants improperly noted the deposition of Arvin without seeking either the consent of this Court, a further extension of the discovery deadline. Moreover, Defendants' motion to strike make any reference to the good cause requirement. As such, this Court finds that Defendants have failed to satisfy the good cause requirement necessary to modify this Court's discovery deadline. Therefore, Defendant Davis's Motion to Strike the Affidavit of Arvis must be denied.

## CONCLUSION

For the aforementioned reasons, this Court finds that there are genuine issues of material fact in dispute as to whether Plaintiff entered the flow of traffic, such that the boulevard rule is inapplicable. Additionally, the speed and actions of Defendants — as well as Plaintiff — are also matters concerning which there exists a genuine dispute of material facts. Accordingly, both Defendants' Motion for Summary Judgment are hereby DENIED. Additionally, Defendant Davis's Motion to Strike the Affidavit of Arvis is DENIED. An Order consistent with this Opinion will follow.

<u>August 3, 2005</u>                                             <u>          /s/          </u>
Date                                                            Alexander Williams, Jr.
                                                                United States District Judge